UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TXL MORTGAGE CORPORATION,<br><br>Defendant. | Civil Action No. 15-1658 (JEB) |

**MEMORANDUM OPINION**

The United States sued TXL Mortgage Corporation for treble damages and civil penalties under the False Claims Act, alleging that the company falsely underwrote residential-mortgage loans for mortgages on which the federal government was later asked to make insurance payments under the Fair Housing Act. After seeking several extensions of time, TXL failed to respond to the Complaint, and its attorneys withdrew their appearances. The Clerk of Court entered a default on July 1, 2016, and Plaintiff has now moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). As the United States has sufficiently demonstrated that the allegations in its Complaint warrant the default judgment that it seeks, the Court will grant the Motion.

**I.    Analysis**

The determination of whether a default judgment is appropriate is "committed to the sound discretion of the trial court." Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980) (citations omitted). A default judgment may enter where a defendant is "totally unresponsive," and his default is plainly willful, as reflected by his failure to respond to the summons and complaint, the entry of default, or the motion for default judgment. See Gutierrez v. Berg

1

Contracting Inc., No. 99-3044, 2000 WL 331721, at *1 (D.D.C. March 20, 2000) (citing Jackson, 636 F.2d at 836). Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson, 636 F.2d at 835, and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez, 2000 WL 331721, at *2 (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)). Once a default is entered, however, the defendant "is deemed to admit every well-pleaded allegation in the complaint." Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); see Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); see also 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.) (defaulting "defendant has no further standing to contest the factual allegations of plaintiff's claim for relief"). If those facts are sufficient to establish liability, the court then "make[s] an independent determination of the sum to be awarded" based upon evidence in the record. See Adkins, 180 F. Supp. 2d at 17.

There is no doubt that TXL Mortgage has been "totally unresponsive" and willfully in default in this case. On October 8, 2015, the United States filed its Complaint, which it served on TXL on October 19, 2015. See ECF No. 1 (Compl.); ECF No. 4 (Return of Service). Since then, TXL has failed to respond to the Complaint, the entry of default, or this Motion for Default Judgment, and its attorneys withdrew their appearances. As a result, the only questions now remaining are whether the United States has pled facts that are legally sufficient to make out an FCA claim and sufficiently supported with record evidence the damages and civil fines that it seeks.

It has. For a claim brought under Section 3729(a)(1)(A) of the FCA, a complainant must prove that "(1) the defendant submitted [or caused to be submitted] a claim to the government,

(2) the claim was false, and (3) the defendant knew the claim was false." United States ex rel. Tran v. Computer Scis. Corp., 53 F. Supp. 3d 104, 121-22 (D.D.C. 2014) (quotation omitted). A "claim" includes "any request or demand . . . for money or property" made to a recipient if the Government provides or reimburses the recipient any portion of the money requested. See 31 U.S.C. § 3729(b)(2). If the defendant did not itself submit the false claim, its actions can nevertheless satisfy the first element if it "caused [the claim] to be presented" to the Government because such conduct was "a substantial factor in causing, if not the but-for cause of, submission of false claims." Computer Scis., 53 F. Supp. 3d at 126 (quotations and marks omitted). In other words, the FCA "extends beyond the person making a false claim to one who engaged in a fraudulent course of conduct that induces payment by the government." Id.

The Complaint shows that TXL's conduct induced the nine insurance claims at issue to be submitted for payment to the Government. For each property, TXL certified that the loans met certain requirements necessary to be insured by the Government under the Fair Housing Act. See Compl., ¶¶ 109-11 (Bark Ridge Property), 118-21 (Gregory Property), 129-31 (Martin Circle Property), 141-43 (Grand Field Property), 153-55 (Armstrong Lane Property), 168-70 (Echo Peak Property), 180-82 (Blue Bonnet Property), 193-95 (Tumblewood Drive Property), 202-05 (Carmen Place Property). Those loans then went into default when the borrowers failed to make payments, and, accordingly, the Government was forced to make payouts when presented with FHA insurance claims by the mortgage holders. Id., ¶¶ 116-17 (Bark Ridge Property), 127-28 (Gregory Property), 139-40 (Martin Circle Property), 151-52 (Grand Field Property), 166-67 (Armstrong Lane Property), 178-79 (Echo Peak Property), 191-92 (Blue Bonnet Property), 200-01 (Tumblewood Drive Property), 208-09 (Carmen Place Property). Several courts have recognized that a lender in TXL's position causes false claims to be submitted when it

improperly endorses loans for such government insurance and claims are later made on that insurance. See, e.g., United States v. Americus Mortg. Corp., No. 12-2676, 2014 WL 4274279, at *9 (S.D. Tex. Aug. 29, 2014) (collecting cases); see also United States ex rel. Fago v. M&T Mortg. Corp., 518 F. Supp. 2d 108, 117 (D.D.C. 2007). In short, the "inchoate" claim represented by the false application for government-backed insurance on the loan effectively "ripen[s]" into a viable FCA claim when the government is forced to pay out the improperly acquired insurance. See M&T Mortg. Corp., 518 F. Supp. 2d at 117 (explaining the theory). The first element of the Government's FCA claim is thus satisfied.

The second element of the FCA cause of action – that the claims were false – is also supported by the record. A claim can be "false" under a variety of theories, including when it facially contains inaccurate facts or when it contains false express or implied certifications of compliance with regulatory requirements. See, e.g., Computer Scis., 53 F. Supp. 3d at 117, 122. When the claim rests on a false certification, the requirement at issue "must [also] be material to the Government's payment decision in order to be actionable." Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 1996 (2016). Again, the Government has adequately demonstrated that TXL either provided facially inaccurate facts or violated key FHA underwriting requirements, which then fraudulently induced the Government into endorsing the loans and paying out subsequent claims for insurance. See, e.g., Compl., ¶¶ 111 (Bark Ridge Property), 123-25 (Gregory Property), 196-98 (Tumblewood Drive Property), 205-07 (Carmen Place Property), 135-39 (Martin Circle Property), 144-46 (Grand Field Property), 156-58 (Armstrong Lane Property), 171-74 (Echo Peak Property), 183-86 (Blue Bonnet Property); see also United States v. Wells Fargo Bank, N.A., 972 F. Supp. 2d 593, 624 (S.D.N.Y. 2013); United

States v. Spicer, 57 F.3d 1152, 1159 (D.C. Cir. 1995).  As such, the second FCA element has been met.

The record further bears out that TXL's actions satisfy the final element of the FCA claim – *i.e.*, it acted "knowingly" as to the falsity and materiality of the documentation it submitted, which ultimately resulted in claims for FHA insurance.  See Computer Scis., 53 F. Supp. 3d at 121-22; see also Escobar, 136 S. Ct. at 1996.  Under the FCA, a person acts "knowingly" when she submits a claim in deliberate ignorance of the truth or falsity of the information provided or, alternatively, in reckless disregard of the truth or falsity of the information.  See 31 U.S.C. § 3729(b)(1); see also United States ex rel. Folliard v. Gov't Acquisitions, Inc., 764 F.3d 19, 29 (D.C. Cir. 2014).  In other words, no proof of a specific intent to defraud is required.  See 31 U.S.C. § 3729(b)(1)(B).  The Government meets its burden to show the requisite intent in this case because TXL failed to abide by legally mandated quality-control standards, such as review of early-payment defaults and disclosure to the U.S. Department of Housing and Urban Development of material deficiencies found in its loans.  See Compl., ¶¶ 214-16.  Other courts have found similar evidence sufficient to meet the requisite *scienter*, and it suffices here as well.  See, e.g., Wells Fargo, 972 F. Supp. 2d at 616-17; Americus Mortgage, 2014 WL 4274279, at *9-10; United States v. Movtady, 13 F. Supp. 3d 325, 333 (S.D.N.Y. 2014).

Finally, the Government has adequately supported its request for both damages and civil penalties.  Once an FCA violation is established, TXL is on the hook for three times the civil damages that it caused and not less than $5,500 in civil penalties for each false claim.  See 31 U.S.C. § 3729(a)(1). Because this Court has already found that TXL submitted nine false claims, the Government is entitled to $49,500 in civil penalties.  The Government, moreover, has

documented through an affidavit and supporting exhibits that it paid out $751,826.72 on these nine loans.  See ECF No. 18, Exhs. 1-10.  As a result, the United States is entitled to triple that amount, which equals $2,255,480.16.  United States ex rel. Schwedt v. Planning Research Corp., 59 F.3d 196, 200 (D.C. Cir. 1995).  In total, then, the United States is entitled to a monetary judgment of $2,304,980.16.

## II.     Conclusion

As Plaintiff has sufficiently demonstrated that the allegations in its Complaint warrant a default judgment in the amount that it seeks, the Court will issue a contemporaneous Order reflecting such judgment.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 20, 2016